**In re Eugene Frank RUMPZA, Debtor.**

**Bankruptcy No. 484–00402.**

United States Bankruptcy Court,
D. South Dakota.

Oct. 29, 1985.

Roger W. Damgaard, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., pro se, for creditors Randall P. Graff and Diane K. Graff.

Kathleen K. Kilmer, Minnehaha County State's Attorney's Office, Sioux Falls, S.D., Trustee, pro se.

Andrew J. Schmid, Office of the United States Trustee, Minneapolis, Mn., for U.S. Trustee William P. Westphal, Sr.

J. Bruce Blake, Sioux Falls, S.D., for debtor Eugene Frank Rumpza.

*Higgins Lumber Company v. Marucca,* 159 Pa. Super. 405, 48 A.2d 48 (1946).

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

This case is before the Court on objections by the Chapter 7 trustee, Kathleen K. Kilmer, pro se, to an application for allowance of administrative expenses filed by Roger W. Damgaard, counsel for Creditors Randall and Diane Graff. A hearing on these objections was held on October 4, 1985.

The debtor filed a Chapter 7 petition on December 12, 1984. Kathleen K. Kilmer was appointed trustee, and a Section 341 meeting of creditors was set for January 28, 1985. The debtor was unable to attend the meeting on January 28, and it was continued to March 25, 1985.

On January 29, 1985, Roger W. Damgaard, attorney for Randall and Diane Graff, sent a letter to the trustee informing her of various irregularities in the debtor's schedules, including the existence of a lake cabin owned by the debtor on Bass Beach, Pickeral Lake, South Dakota, which was not listed as an asset on the bankruptcy schedules.

In February, Mr. Damgaard filed a motion for Section 2004 examination, which was granted by the Court. Mr. Damgaard conducted the Section 2004 examination of the debtor on March 11, 1985. During the examination, the debtor admitted that he had failed to list as assets on his schedules a lake cabin, which he estimated to be worth $14,000.00; a Melroe Bobcat; some accounts receivable; and some items of personal property in a ministorage facility in Minnesota. The debtor said that he had granted his grandfather-in-law a security interest in the lake cabin, and he turned over copies of the security documents to Mr. Damgaard. Following the Section 2004 examination, Mr. Damgaard filed a motion requesting an extension of time to file a complaint objecting to discharge, which the Court granted.

Mr. Damgaard asks that his fees be paid as an administrative expense because his efforts were instrumental in the discovery of concealed assets for the estate. The trustee objects, arguing that Mr. Damgaard's efforts did not contribute significantly to the discovery of assets and that, even if the Court determines otherwise, his fees include charges for work not related to recovery of concealed assets but for work relating to the unsuccessful complaint objecting to the debtor's discharge. The issue is two-fold: whether Mr. Damgaard's efforts were of benefit to the estate; and, if so, whether he is entitled to payment in the amount stated as an administrative expense under Section 503(b) of the Code. On March 14, 1985, Mr. Damgaard filed the transcript of the Section 2004 examination with the Court and, a few weeks later, forwarded copies of the transcript and the security documents produced by the debtor to the trustee.

On March 20, 1985, the debtor filed an amendment to his claimed exempt property listing, among other things, the lake cabin and furniture valued at $13,500.00. On March 25, 1985, the trustee conducted the meeting of creditors. At that time, she questioned the debtor about the lake cabin and indicated that she would be objecting to the recent additions to exempt property claimed by the debtor. The only creditor appearing on March 25 was Attorney Vance R.C. Goldammer representing Norwest Bank of Rapid City. During April, the trustee investigated the lake cabin and entered into settlement negotiations with the debtor. On May 1, 1985, the trustee began a new job with the Minnehaha County State's Attorney's Office. Later that month, at Mr. Damgaard's request, the trustee joined in a complaint objecting to the debtor's discharge filed by the Graffs. The trustee told Mr. Damgaard at that time that she did not believe there would be funds available from the estate to pay for pursuing the matter. Mr. Damgaard litigated the complaint. On July 18, 1985, this Court entered a Judgment of Dismissal on the objection to discharge based upon evidence at trial which indicated that the debtor had been experiencing serious marital and alcohol problems during the pendency of the case.

Prior to the trial on the objection to discharge, the trustee accepted a settlement offer of $6,500.00 cash from the debtor on the trustee's objections to claimed exempt property, based primarily upon an appraisal of the lake cabin submitted by the debtor in the amount of $9,500.00.

Mr. Damgaard's application and the trustee's objection followed.

The Code provides for the allowance of administrative expenses under Section 503. Subsection (b)(3)(B) provides in pertinent part:

"After notice and hearing, there shall be allowed administrative expenses, ... including ... the actual, necessary expenses, ... incurred by ... a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor."

■ The facts in the instant case indicate that the existence of the lake cabin and the possibility of other irregularities in the debtor's schedules were first brought to the attention of the trustee by Mr. Damgaard in January, prior to the meeting of creditors. It also appears that the amendments to the debtor's schedules in March were made as a direct result of the probing by Mr. Damgaard and subsequent admissions elicited from the debtor by him at the Section 2004 examination. Although the trustee followed up on these leads and negotiated a settlement with the debtor, Mr. Damgaard's efforts were instrumental in the discovery of the assets for the estate. Although Mr. Damgaard did not obtain prior court approval, efforts such as these by creditors on behalf of the estate and resulting in a benefit to all creditors should be encouraged, and the Court will not deny him compensation on that basis.

■ The trustee questions the charges included in Mr. Damgaard's application which were related to the complaint objecting to discharge. She maintains that he should not be compensated for these services because the litigation was unsuccessful, because she did not feel the complaint was worth pursuing, and because she told Mr. Damgaard at the time that there was no money available to pay him. The Court cannot agree. As the Bankruptcy Court for the Southern District of Florida explained in *In re George*, 23 B.R. 686, 7 C.B.C.2d 846 (Bkrtcy.S.D.Fla.1982), the former Bankruptcy Act expressly included as an administrative expense under Section 64(a)(3) a creditor's reasonable costs and expenses in opposing or revoking a discharge. Even though this provision is omitted in the new Bankruptcy Code and Amendments, the Florida court concluded that the omission reflects not a legislative intent to prohibit reimbursement for these expenses but merely to deprive them of mandatory payment status. *Id.* 23 B.R. 686, 7 C.B.C.2d at 848. This Court is of the same opinion.

With regard to the trustee's other contentions, the Court finds them unpersuasive. Compensation for services on the complaint opposing discharge should not depend on a successful outcome. The complaint was prosecuted competently and with vigor. If the trustee felt the complaint had no merit, she should not have signed the pleadings. Finally, as previously stated, prior agreement by the trustee for compensation out of estate funds will not defeat Mr. Damgaard's claim. Mr. Damgaard proceeded and took the risk that he might not be compensated out of estate funds for his efforts. Those efforts in total benefited all the creditors of the estate. His risk, in this case, will be rewarded.

As a postscript, the Court feels it must comment on the apparent hostility between counsel at the hearing on these objections. The Court cannot condone such behavior and expressly discourages it, but will not allow it to color the facts.

This Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Mr. Damgaard is directed to submit a proposed Order and Judgment, consistent with the Court's Findings of Fact and Conclusions of Law and in accord-

ance with Bankr.R.P. 9021, to the Clerk of this Court.