### In the MATTER OF Giovanni ZEDDA and Janet Gaudet Zedda, Debtors.

### Bankruptcy No. 91–10807–JAB.

United States Bankruptcy Court, E.D. Louisiana.

Feb. 22, 1994.

As Amended March 16, 1994.

Wilbur J. Babin, Trustee, New Orleans, LA.

Thomas E. Schafer, III, New Orleans, LA, for. debtors.

Mark S. Goldstein, New Orleans, LA, for Valentino Rovere, creditor.

Diana L. Rachal, Staff Atty., Office of U.S. Trustee.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the Court on the application of Mark S. Goldstein ("Goldstein") and Dennis Mann for recognition and payment of administrative fees and expenses in the amount of $12,157.67. (Pl. 44). The debtors objected to the application at the hearing held on November 10, 1993, (Pl. 51). For the reasons stated below, the motion is **GRANTED IN PART.**

### I. *Background*

The movers are attorneys for Valentino Rovere ("Rovere"), a creditor of the debtors. On or about February 5, 1991, the movers filed a petition for declaration of simulation or revocatory action on behalf of Rovere against the debtors in the Civil District Court for the Parish of Orleans, State of Louisiana. The basis of the suit was that Rovere had cosigned a promissory note payable by the debtors to First National Bank of Commerce in the amount of $20,000.00 based on Rovere's understanding that the debtors' residence located at 238 West Kenilworth Street in New Orleans was owned by Janet Zedda. When the loan was renewed Rovere executed an additional continuing guarantee. Rovere, as guarantor, paid the note in full when the debtors defaulted on the note. The petition filed in the Civil District Court alleged that a sham transaction occurred on October 5, 1990, when Janet Zedda purported to sell her property to her father Ferdie J. Gaudet ("Gaudet") for a stated consideration of $54,000.00 cash and assumption of a $26,000.00 mortgage.

On March 4, 1991, the debtors filed for protection under Chapter 7 of the Bankruptcy Code, thereby staying any further proceedings on Rovere's suit in the Civil District Court.

The movers assert that they attended the Section 341 Creditor's Meeting, informed the trustee, Wilbur J. "Bill" Babin, Jr. ("Babin"), of the transaction, and basically persuaded the trustee to take over Rovere's state court cause of action. Goldstein contends that the trustee approached movers about representing him, but they declined the request because they felt there was a conflict of interest due to his representation of Rovere.

The trustee subsequently filed a "complaint to avoid fraudulent transfer and/or preferential transfer and for declaratory judgment" as an adversary proceeding entitled *Wilber J. "Bill" Babin, Jr. v. Ferdie Joseph Gaudet,* Adversary Proceeding No. 91–1250. The complaint in essence alleges the same cause of action raised by Rovere in the Civil District Court suit. By judgment of July 27, 1993, Bankruptcy Judge T.H. Kingsmill entered judgment in favor of Babin and against Gaudet, and determined that the net proceeds of $54,383.57 from the sale of 238 West Kenilworth Avenue are property of the estate and subject to administration of the trustee. The matter is presently on appeal.

The movers contend that Babin relied on their work, and that much of the work which resulted in a recovery to the estate was performed by them, including: noticing of depositions, preparation of the title opinion on the property, assisting in developing the

theories of the case, and negotiating the eventual sale of the property. Thus, the movers assert that their work was of substantial benefit to the estate, and should be compensated. Attached to their application is an itemization of services. The movers, however, are not seeking compensation for any prepetition work, and have also agreed to delete the time incurred by them in prosecuting Rovere's complaint objecting to discharge brought pursuant to 11 U.S.C. § 727. The movers have not withdrawn the time incurred in prosecuting Rovere's complaint to determine dischargeability of a debt under 11 U.S.C. § 523 because they contend that that constitutes the same work that benefitted the estate.

The trustee agrees that but for the work completed by the movers, a judgment in favor of the estate in the amount of $54,-383.57 would not have been entered. Therefore, it is undisputed that the services performed by the movers resulted in substantial benefit to the estate.

## II. *Analysis*

The debtors oppose the application, and argue that the movers failed to obtain prior court approval for their services as required by 11 U.S.C. § 327. The movers contend that the debtors have no standing to oppose the application, but concede that the Court has an independent duty to determine if the fees are reasonable.

■ The Court agrees with the movers' argument. The debtors have no interest in the estate, and therefore lack standing to oppose any fee applications. *In re Stable Mews Associates,* 49 B.R. 395, 397 (Bankr. S.D.N.Y.1985); *In re George,* 23 B.R. 686 (Bankr.S.D.Fla.1982). The Court, of course, has an independent duty to determine the reasonableness of the application. *Id.; In re First Colonial Corp.,* 544 F.2d 1291 (5th Cir. 1977).

■ The issue of whether creditors should be compensated for services performed which are of benefit to the estate has been the subject of differing views by the bankruptcy courts. Some courts have permitted creditors to be compensated for their reasonable services even though prior court authorization was not obtained when the creditor's work resulted in a substantial benefit to the estate, and the recovery of property. *See e.g. In re Antar,* 122 B.R. 788 (Bankr. S.D.Fla.1990) (Attorney fees awarded to creditor who commenced complaint objecting to discharge which was subsequently joined by the trustee, even though prior court approval was not obtained); *In re Romano,* 52 B.R. 590 (Bankr.M.D.Fla.1985) (Reasonable attorney fees were permitted to creditor's attorney under Section 503(b)(4) when the services substantially contributed to the estate, but were not permitted under Section 503(b)(3)(B)); *In re George,* 23 B.R. 686 (Bankr.S.D.Fla.1982) (Court retroactively approved payment to creditor as an administrative claim under Section 503(b)(3)(B) when the services resulted in substantial recovery to the estate).

Other courts, however, have denied fees under similar circumstances. *See e.g. In re Peterson,* 152 B.R. 612 (D.S.D.1993) (Chapter 12 creditor's attorney denied payment for services performed that substantially benefitted the estate because the fees were not included under Section 503(b), and Section 503(b)(3)(D) includes expenses incurred by a creditor who makes a substantial contribution in a Chapter 9 or Chapter 11 case, thereby excluding similar payments made to a Chapter 12 creditor); *In re Monahan,* 73 B.R. 543 (Bankr.S.D.Fla.1987) (The plain language of Section 503(b)(3) and (b)(4) precludes payment to a creditor's attorney who failed to seek prior court approval); *In re Spencer,* 35 B.R. 280 (Bankr.N.D.Ga.1983) (Creditor not permitted to recover actual and necessary expenses without seeking prior court approval); and *In re Casale,* 27 B.R. 69 (Bankr.E.D.N.Y.1983). No Fifth Circuit opinion on the issue could be located.

The Court agrees with the following rationale of the bankruptcy court in *Antar:*

To not allow, under the appropriate circumstances, creditors and their counsel to recover fees and costs incurred and paid with relation to this investigation [of the financial affairs of the debtor] and prosecution of action would have a chilling effect

upon creditor participation within a bankruptcy proceeding.

*Antar,* 122 B.R. at 791.

Further, the use of the term "including" in Section 503(b), indicates that the items enumerated in Section 503(b) are an illustrative listing of the types of administrative claims that will be permitted, not a limitation on what can be determined to be an administrative claim. 11 U.S.C. § 502(b); *In re Al Copeland Enterprises, Inc.,* 991 F.2d 233, 239 (5th Cir.1993). Therefore, it is not fatal that the movers' application does not fit squarely within the language of Section 503(b)(3) or (b)(4).

As indicated by the *Antar* Court, not every instance should warrant a retroactive allowance and authorization for attorney fees for a creditor's counsel under Section 503(b). In this case, however, because the movers' services substantially benefitted the estate and assisted in the recovery of assets to the estate, reasonable fees will be permitted.

■ The trustee argues that the fees should be limited to the amount that the movers would have received under their contingency fee contract with Rovere, i.e. one-third of the $20,000.00 claim. The Court agrees with this argument because it would be unfair to permit the movers to recover more representing a creditor in a bankruptcy case than they would have received if no bankruptcy had been filed. Therefore, the Court will permit attorney's fees in the amount of $6,666.67. Further, although the movers indicated that the time incurred for prosecution of Rovere's adversary proceeding had been deleted, a review of the costs incurred indicates an expense of $120.00 to the Clerk of the Bankruptcy Court for the filing of the adversary proceeding objecting to the discharge of Rovere's debt. Accordingly, the Court will reduce the expenses sought by the movers by $120.000, from $1,139.42 to $1,019.42.

Finally, as indicated previously, the adversary proceeding brought by the trustee is presently on appeal. The Court granted the trustee's fee application on the condition that the monies awarded must be returned if the judgment is not maintained on appeal. The Court will impose the same condition on the award to the movers. An order will be entered in accordance with these reasons for order.