KATHLEEN M. O’MALLEY, Circuit Judge,
dissenting.
The question presented in this appeal is a purely legal one: does § 503(b) of the Bankruptcy Act of 1978 (“Bankruptcy Code”) authorize a bankruptcy court to reimburse a creditor for costs incurred in *820 providing a “substantial contribution” to the administration of a bankruptcy estate and to classify that reimbursement as an administrative expense? The bankruptcy court that considered Coface’s request for such a reimbursement decided that the answer was no. On - appeal, the district court agreed with that conclusion. The majority reverses, concluding that § 503(b), though not expressly authorizing the payments at issue, does not “check” a bankruptcy court’s equitable power to authorize the administrative expense Coface requested. I respectfully disagree. For the reasons stated by the district court, and those set forth below, I would affirm the bankruptcy court’s decision.
I.
I agree that bankruptcy courts are courts of equity and that equitable principles, therefore, govern the exercise of bankruptcy jurisdiction. But, as the majority recognizes, the equitable nature of a bankruptcy proceeding does not untether a bankruptcy court from the strictures of the Bankruptcy Code itself. Indeed, the Supreme Court has made clear that the equitable power of a bankruptcy court (‘can only be exercised within the confines of the Bankruptcy Code.” Law v. Siegel, — U.S.-, 134 S.Ct. 1188, 1194-95, 188 L.Ed.2d 146 (2014) (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)); see also Raleigh v. Ill. Dep’t of Revenue, 530 U.S. 15, 24-25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (“Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law ... but are limited to what the Bankruptcy Code itself provides.”). This court has also recognized that, “although the bankruptcy court has broad equitable powers under 11 U.S.C. § 105(a), those powers are not unlimited.” In re Foremost Mfg. Co., 137 F.3d 919, 924 (6th Cir.1998). We must, accordingly, begin with the terms of the statute to determine whether Congress has confined the reach of the bankruptcy court’s equitable powers in § 503(b). Section 503(b) provides:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-
(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.
This court has made clear that “[cjlaims for administrative expenses under § 503(b) are [to be] strictly construed because priority claims reduce the funds available for creditors and other claimants.” In re Federated Dep’t Stores, Inc., 270 F.3d 994, 1000 (6th Cir.2001); see also In re United Educ. & Software, No. CC-05-1067-MaMeP, 2005 WL 6960237, at *4 (9th Cir. BAP Oct. 7, 2005) (“Section 503(b) has been construed narrowly because administrative claims are paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants.”). Rather than strictly construe § 503(b), however, the majority gives it a sweeping reach. It concludes that the use of the term “including” in § 503(b) allows bankruptcy courts to classify substantial contribution expenses by a creditor in a Chapter 7 proceeding as an administrative expense. It reaches this conclusion, moreover, despite the explicitly narrower language in § 503(b)(3)(D) — ex *821 pressly authorizing reimbursements in proceedings under Chapters 9 and 11, but not mentioning Chapter 7. The majority believes that § 503(b)(3)(D) would only limit a court’s ability to award substantial contribution administrative expenses in Chapter 7 proceedings (and presumably Chapters 12 and 13 proceedings) if the subsection had read “under Chapters 9 and 11 of this title, but not under Chapters 7, 12, and IS thereof.”
Although it is true that Congress could have explicitly stated that § 503(b) excludes substantial contribution claims in Chapter 7, it remains just as true that Congress only specified that substantial contribution claims can be considered administrative expenses under Chapters 9 and 11. Generally, Congress “says in a statute what it means and means in a statute what is says there.” Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); see also In re Hackney, 351 B.R. 179, 201 (Bankr.N.D.Ala. 2006) (“Congress knew how to create á ‘substantial contribution’ administrative expense for cases it believed were appropriate for that benefit. It did that in section 503(b)(3)(D) for Chapter 9 and Chapter 11 cases. It could have done the same in Chapter 7 cases. It did not.”). Further, while Congress chose to use “including” in § 503(b), Congress did not use “including” in § 503(b)(3), implying that the list of “actual, necessary expenses” covered by that provision is exclusive. That Congress used “including” language in some provisions of the Bankruptcy Code, but not others, is meaningful. For example, Congress used “including” for the list of “actual, necessary costs and expenses of preserving the estate” in § 503(b)(1)(A), but conspicuously chose not to include similar language in § 503(b)(3).
The majority’s construction of § 503(b) would also read § 503(b)(3)(D) out of the statute, violating a fundamental canon of statutory construction. See, e.g., Freytag v. Comm’r, 501 U.S. 868, 877, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (stating that “[o]ur cases consistently have expressed ‘a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment’ ” (quoting Penn. Dep’t of Public Welfare v. Davenport, 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990))). Under the majority’s interpretation of § 503(b), § 503(b)(3)(D) would be superfluous. If substantial contributions in a Chapter 7 proceeding can be considered an administrative expense under the broad “including” provision of § 503(b), then there is no reason why substantial contributions in Chapter 9 and 11 proceedings could not also have been considered administrative expenses under that same language, making § 503(b)(3)(D) unnecessary. The majority fails to explain the purpose of § 503(b)(3)(D) under its interpretation of the statutory scheme.
The majority also claims that Congress did not include Chapter 7 in § 503(b)(3)(D) because it is only the rare case where a creditor would need to step in to benefit the estate in Chapter 7 proceedings because the Trustee normally fulfills that role. Maj. Op. at 817-18. This explanation seems to support the notion that Congress consciously chose to exclude Chapter 7 from § 503(b)(3)(D), however; if Congress felt substantial contribution reimbursements were not needed in Chapter 7 cases we must respect that conclusion. Indeed, what little legislative history there is regarding §' 503(b)(3)(D) indicates that Congress intended its scope to be limited. Senate Bill 236, one of the earliest versions of the Bankruptcy Act, provided that an administrative claim “shall be allowed” for “compensation for services, representing a substantial contribution” or an “expense, representing a substantial contribution” in *822 Chapter 9 and 11 proceedings.[1] S. 236, 94th Cong. ' § 4403(a)(8), (9) (1975). House Bill 6, adopting the modern structure of § 503(b), continued to describe substantial contributions as administrative expenses in Chapters 9 and 11, but not Chapter 7. H.R. 6, 95th Cong. (1977). Later bills in the House, such as H.R. 8200, 95th Cong. (1978), and H.R. 7330, 95th Cong. (1977), and Senate, such as S. 2266, 95th Cong. (1978) (amended), and S. 2266, 95th Cong. (1977), continued to provide for substantial contributions as administrative expenses for only Chapter 9 and 11 proceedings. And, unlike in In re Mark Anthony, 886 F.2d 1101 (9th Cir.1989), or In re Flo-Lizer, Inc., 916 F.2d 363 (6th Cir. 1990), upon which the majority relies, where Congress legislated against a background common law rule providing for a particular type of administrative expense, neither Coface nor the majority places the legislative history of § 503(b)(3)(D) in that same context. While the House and Senate reports and hearings are silent on § 503(b)(3)(D), and Congressional silence often has little interpretative value, Helvering v. Hallock, 309 U.S. 106, 121, 60 S.Ct. 444, 84 L.Ed. 604 (1940) (“[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle”), Congress’s decision to explicitly include Chapters 9 and 11 in § 503(b), while not including Chapter 7 in even the earliest drafts of the Bankruptcy Act, further persuades me that Congress did not intend for § 503(b) to cover substantial contributions in Chapter 7 proceedings. That Congress may not have foreseen the unusual circumstances at issue here does not give us the freedom to rewrite the statute in order to take account of them and reach an “equitable” solution.
Indeed, other courts, including at least one panel from this court, that have considered the issue seem to agree that § 503(b)(3)(D) excludes Chapter 7 proceedings. Our court, in In re Trailer Source, Inc., 555 F.3d 231 (6th Cir.2009) (analyzing the scope of § 503(b)(3)(B)), stated that:
[TJhere is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts [for § 503(b)(3)(B)]. Section 503(b)(3)(B) ... applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of § 503(b)(3) to Chapters 9 and 11. See § 503(b)(3)(D)....
Id. at 243. Thus, we have previously recognized that Congress limited § 503(b)(3)(D) to only Chapters 9 and 11. Other circuits and bankruptcy appellate panels — not to mention the vast majority of district and bankruptcy courts[2] — have *823 held expressly that substantial contributions in a Chapter- 7 proceeding are not administrative expenses under. § 503(b). See, e.g., In re United Educ. & Software, 2005 WL 6960237, at *5-7; In re Morad, 328 B.R. 264, 273 (1st Cir. BAP 2005); In re Lloyd Sec., Inc., 75 F.3d 853, 856-58 (3d Cir.1996); Lebron v. Mechem Fin., Inc., 27 F.3d 937, 945 (3d Cir.1994) (“There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that post-conversion expenses were intended to be reimbursable under those provisions or not at all. See, e.g., §§ 503(b)(3)(B) and (C).”).
The majority cites to Sixth Circuit precedent, and that of our sister circuits, to support its interpretation of § 503(b). None of those cases compel the conclusion the majority reaches, however. The majority cites to, for example, In re Mark Anthony Construction, Inc., In re Al Copeland Enterprises, Inc., 991 F.2d 233 (5th Cir.1993), and In re Flo-Lizer, Inc., as evidence that “there is broad consensus that the categories [§. 503(b) ] sketches are not exhaustive.”[3] Maj. Op. at 816.1 agree with the limited holding of these cases that Congress’s use of “including” in § 503(b) implies that §§ 503(b)(1) — (b)(9) do not constitute an exhaustive list of potential administrative expenses. These cases, however, do not require — or even suggest— that we recognize a substantial contribution claim in a Chapter 7 proceeding as an administrative expense in light of .§ 503(b)(3)(D). For example, in In re Al Copeland Enterprises, the Fifth Circuit determined that post-petition interest on sales taxes could be considered an administrative expense under § 503(b)(2). 991 F.2d at 238-39. But, unlike the present appeal, § 503(b) is entirely silent regarding interest as an administrative expense, and does not contain a provision, analogous to § 503(b)(3)(D), that explicitly defines the circumstances under which interest can be considered an administrative expense. Id.
*824 Similarly, both the Ninth Circuit and this court, in adopting the Ninth Circuit’s analysis, have held that post-petition interest from unpaid federal employment taxes can be considered an administrative expense. In Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Supreme Court held that interest could be treated as an administrative expense under a prior version of the Bankruptcy Act. In re Mark Anthony Constr., 886 F.2d at 1104. The Ninth Circuit, in In re Mark Anthony Construction, identified an early Senate bill for the modern Bankruptcy Act that specifically included interest as an administrative expense under § 503(b), consistent with Nicholas, though the later House version of the bill and the eventual compromise bill were silent on the subject. Id. Given the use of the open-ended “including” language of § 503(b) and Congress’s failure to expressly exclude interest from the reach of that language, the court held that § 503(b) and its legislative history supported the continued application of the common law rule of Nicholas that interest could be considered an administrative expense. • Id. at 1106. The Ninth Circuit further noted that Congress explicitly included penalties for failure to pay taxes as an administrative expense in § .503(b)(1)(C), and concluded that there was no reason to treat interest and penalties differently. Id. at 1108. In In re Flo-Lizer, this court largely adopted the Ninth Circuit’s approach, focusing on the “including” language in § 503(b), the legislative history of the Bankruptcy Act, and the treatment of penalties in § 503(b)(1)(C), to hold that interest could be considered an administrative expense under § 503(b) even if not expressly mentioned. In re Flo-Lizer, Inc., 916 F.2d at 365-66.
These eases are distinguishable from the circumstances before us now: (1) Co-face has not identified any pre-Bankrupt-cy Act practice of granting administrative expense status to creditor contributions in Chapter 7 proceedings; (2) nothing in the legislative history indicates that either house of Congress believed substantial contribution claims in Chapter 7 proceedings were appropriate; and (3) no provision of § 503(b) grants administrative expenses for costs similar to substantial contributions in Chapter 7. Thus, the case law upon which the majority relies does not actually support an interpretation of § 503(b) which would grant bankruptcy courts the authority to award expenses for substantial contributions by a creditor in Chapter 7 proceedings.
II.
We should be hesitant, as an Article III court, to make a policy determination about the appropriate scope of § 503(b) based solely on Congressional inaction. Congress explicitly stated that substantial contributions can be considered an administrative expense in Chapter 9 and 11 proceedings. Congress has said nothing about Chapter 7. Although the majority reads much into Congress’s use of “including” in § 503(b), Congress’s failure to include Chapter 7 in § 503(b)(3)(D) seems to be far more indicative of its intent, especially where Congress used the term “including” in § 503(b)(1)(A) and did not do so in § 503(b)(3). To the extent the majority relies on principles of equity, moreover, the equities actually cut both ways here. We must consider the equities for all creditors, not just creditors like Coface who seek the higher priority given to administrative expenses. While it is true that Coface’s contributions have benefitted the bankruptcy estate, Coface is not the only creditor seeking recovery from the estate. Pursuant to the majority’s decision to grant Coface administrative expense status for their contributions, other creditors will be harmed, as administrative expenses receive one of the highest priority statuses under § 507. The majority *825 also highlights policy considerations that favor an expansive reading of § 503(b), including promoting creditor participation in Chapter 7 proceedings and rewarding Coface for taking action to remove Shapiro when it had “no way of knowing ... that it ultimately would be successful.” Maj. Op. at 819. Though Coface’s actions are commendable, Coface will be compensated, as a party holding approximately 50% of the amount of the unsecured claims, for its actions. And, as the Supreme Court has cautioned before with respect to the Bankruptcy Code, it is the duty of Congress, and not the courts, to address any difficulties or “improper incentives” that may arise from the application of the plain meaning of a Code provision. Taylor v. Freeland & Kronz, 503 U.S. 638, 644-45, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (stating that it is for Congress to address any “improper incentives” that may come from the Supreme Court’s interpretation of 11 U.S.C. § 522(i) as consistent with the language of the statute). Considerations of equity and fairness simply do not favor Coface as strongly as the petitioners and majority urge. As the only Congressional guidance we have on the interpretation of § 503(b) appears in the apparent restrictions written into § 503(b)(3)(D), we should limit claims for substantial contribution to the express language of § 503(b)(3)(D), and leave it to Congress to expand that authority to Chapter 7 proceedings if it so desires.
While I respect the majority’s thoughtful analysis of this difficult issue, I ultimately must disagree with it. Because the claimed costs accrued during a Chapter 7 case, and because § 503(b)(3)(D) does not permit such costs to be considered an administrative expense under the appropriate limited construction of § 503(b), I believe that we should affirm the holdings of the bankruptcy court and district court, and deny Coface’s application for administrative expenses under § 503(b).

. Of note, § 4-403(a)(8) referred to substantial contributions for a "chapter VII case” while § 4-403(a)(9) referred to substantial contributions for a "chapter VIII case.” Chapter VII, titled "Reorganizations”, and Chapter VIII, titled "Adjustment of Debts of Public Agencies and Instrumentalities and Political Subdivisions,” would become Chapters 11 and 9, respectively, in later bills. See, e.g., S. 2266, 95th Cong. (1978); H.R. 7330, 95th Cong. (1977).

. At the time of this writing, 25 bankruptcy or district courts either denied recovery for substantial contributions in a Chapter 7 case or recognized that § 503(b)(3)(D) is limited to only Chapters 9 and 11. In re Peterson, 152 B.R. 612, 614 (D.S.D.1993); In re Beck Rumbaugh Assocs. Inc., 84 B.R. 369, 371 (E.D.Pa. 1988); In re Kavlakian, No. 06-11280-JNF, 2013 WL 2422688, at *11 n. 2 (Bankr.D.Mass. June 3, 2013); In re Watson, 495 B.R. 88, 93-95 (Bankr.D.Col.2013); In re Keeley and Grabanski Land P’ship, No. 10-31482, 2013 WL 4170414, at *11 (Bankr.D.N.D. Aug. 15, 2013); In re Engler, 500 B.R. 163, 174 (Bankr.M.D.Fla.2013); In re Schimmel, No. 11-10272, 2012 WL 6538953, at *1 (Bankr. N.D.Cal. Dec. 12, 2012); In re Lambert, No. 04-30394 — WRS, 2010 WL 3927067, at *1-2 (Bankr.M.D.Ala. Oct. 5, 2010); In re Courtney, 359 B.R. 883, 887 n. 2 (Bankr.E.D.Tenn. *823 2007); In re Hackney, 351 B.R. 179, 200-05 (Bankr.N.D.Ala.2006); In re Harvey, No. 04-35576PM, 2006 WL 4481990, at *2 (Bankr. D.Md. Nov. 22, 2006) (denying reimbursement despite recognizing that "fundamental fairness crie[d] out for” it because "§ 503(b)(3)(D) is limited to cases under Chapter 9 or 11"); In re Hall, 373 B.R. 788, 800 (Bankr.S.D.Ga.2006); In re Chavez, No. 05-29937-B-7, 2006 WL 3832858, at *3 (Bankr.E.D.Cal. Dec. 27, 2006); In re Dorado Marine, Inc., 332 B.R. 637, 640 (Bankr. M.D.Fla.2005); In re United Container LLC, 305 B.R. 120, 128 (Bankr.M.D.Fla.2003); In re Blount, 276 B.R. 753, 757 (Bankr.M.D.La. 2002); In re Schachter, 228 B.R. 359, 362 (Bankr.E.D.Pa. 1999) (acknowledging that § 503(b)(3)(D) is inapplicable to Chapter 7 proceedings); In re Conty, 205 B.R. 329, 332 (Bankr.M.D.Fla.1996); In re Alumni Hotel Corp., 203 B.R. 624, 631 (Bankr.E.D.Mich. 1996); In re Francosky, 185 B-.R. 550, 551 (Bankr.N.D.Ohio 1995); In re Indian Motocycle Apparel and Accessories Co., Inc., 174 B.R. 659, 663 n. 2 (Bankr.D.Mass.1994); In re Trinsey, 115 B.R. 828, 836 (Bankr.E.D.Pa. 1990); In re Kohler, 84 B.R. 721, 723 (Bankr. D.Col.1988); In re Beck-Rumbaugh Assocs., Inc., 68 B.R. 882, 885-86 (Bankr.E.D.Pa. 1987), aff'd, 84 B.R. 369, 371 (E.D.Pa.1988); In re Romano, 52 B.R. 590, 594 (Bankr. M.D.Fla.1985). In contrast, only four bankruptcy courts permitted recovery of substantial contributions as an administrative expense in a Chapter 7 case. In re Pappas, 277 B.R. 171, 176 (Bankr.E.D.N.Y.2002); In re Lloyd Sec., Inc., 163 B.R. 242, 252-53 (Bankr. E.D.Pa.1994), rev’d, 75 F.3d 853, 856-58 (3d Cir.1996); In re Zedda, 169 B.R. 605, 607-08 (Bankr.E.D.La.1994); In re Rumpza, 54 B.R. 107, 109 (Bankr.S.D.1985).

. Counsel for Coface has stated that In re Flo-Lizer is the strongest case supporting their argument that § 503(b) permits categorizing substantial assistance claims under Chapter 7 as an administrative expense. Oral Argument at 8:50, Mediofactoring v. McDermott, No. 13-2489 (6th Cir.2014).